611 A.2d 1208

**CHILDS INSTANT HOMES, INC. and Childs Instant Homes, Inc., d/b/a Colonial Heritage, Appellees,**

**v.**

**Robert B. MILLER, Doris Jane H. Miller and Barbara Lee Miller now Barbara Lee Lefbvere, Appellants.**

Superior Court of Pennsylvania.

Argued April 30, 1992.

Filed June 15, 1992.

Reargument Denied Aug. 13, 1992.

J. Michael Ruttle, Newtown, for appellants.

Peter N. Harrison, Doylestown, for appellees.

Before CAVANAUGH, CIRILLO and POPOVICH, JJ.

CAVANAUGH, Judge:

Appellants, Robert and Doris Miller and their daughter, Barbara, appeal from an adverse judgment against them in an ejectment action pursued by appellee, Childs Instant Homes, Inc.

The Millers owned and, through their daughter, occupied a mobile home which was located, pursuant to a lease, in a mobile home park owned by Childs. There is no question that the tenancy at Childs is one covered by the "Mobile Home Park Rights Act" (MHPRA) of November 24, 1976, 68 P.S. § 398.1 *et seq.* The question is, however, whether the owner was bound to and did duly comply with the requirements of the Act in seeking and obtaining judgment of ejectment against appellants.

Appellants argue that the Act established an exclusive scheme for landlords who seek to recover possession of space and facilities leased in a mobile home park and that appellee, having failed to follow the strict requirements of the Act, is not entitled to possession. Appellees argue that appellants had a month-to-month lease which has been duly terminated; that they have rejected a proffer of a new lease; that the provisions of the MHPRA apply only to evictions under a leasehold and that the court's determination of their right to recover possession is without error.

Appellees argue that, otherwise, appellants and others in their position would have, in effect, a statutory right to possession of premises owned by another in perpetuity. We agree with the trial court and affirm.

The MHPRA Act limits the right of a mobile park owner to "evict" a resident to four described circumstances and requires adherence to specific notice and time procedures before eviction may be accomplished. 68 P.S. § 398.3. Here the owner's claim is that the lease had expired and the other bases for eviction are clearly not present, there was no attempt to follow the notice and timing provisions. On the other hand, the appellant residents resist the claim of possession on the ground that the Act covers their tenancy and the statutory procedures were not followed. Appellants rely in part on the sole appellate authority cited by either party. In *Malvern Courts, Inc. v. Stephens*, 275 Pa.Super. 518, 419 A.2d 21 (1980), a panel of this court reversed an order which would permit an eviction.[1] In that case, the eviction was sought for one of the permissible reasons under the Act (violation of rules of mobile home park) but the panel found that there was insufficient compliance with the notice provision of the Act and, therefore, reversed the order of the trial court.

In the present case the appellee did not seek possession for any of the reasons provided in the Act, and, therefore,

1. In its opinion, the court provided its view of the intent of the Act:
    The purpose of this legislation is to give special protection to mobile home owners in mobile home parks. One reason for the distinction between mobile home park owners and other landlords is the hybrid type of property relationship that exists between the tenant who owns the home and the landlord who rents only the lot on which the mobile home sits. In most instances a mobile home owner in a park is required to remove the wheels and anchor the home to the ground in order to facilitate connections with electricity, water and sewerage. Thus it is only at substantial expense that a mobile home can be removed from a park with no ready place to go. The legislature, while recognizing the right of the mobile home park owner to establish and publish reasonable rules and regulations relating to tenants in the part, has sought to prevent arbitrary evictions at a substantial expense to park residents.

    *Malvern Courts, Inc. v. Stephens*, 275 Pa.Super. 518, 522, 419 A.2d 21, 23 (1980).

did not attempt to comply with the notice and timing requirements. Thus, *Malvern Courts* did not address our present concerns and is not relevant to our disposition.

The trial court herein determined that the Mobile Home Park Rights Act did not purport to cover the situation where a lease had expired and the tenant has rejected the proffer of a new lease. The court held that the owner was entitled to the remedy of ejectment and directed the tenants to give up possession. In so ordering, the court was following an authority in the same county which arose under nearly identical circumstances. *Childs Instant Homes, Inc. v. Wolstenholme,* 5 Pa.D. & C. 4th 536 (1989). *Childs I* in turn relied upon the decision in *G & G Mobile Home Sales v. Godfrey,* 15 Pa.D. & C. 3rd 752 (1979). In that case, in an opinion authored by former President Judge Sweet, the court dealt also with an attempt by an owner to recover possession after the term of a lease had expired. In holding that the MHPRA Act provision did not apply to expired lease situations, the court, in part, opined:

We can do this [preserve constitutionality] rather easily by holding that the provisions of the Act, 68 P.S. § 398.-3(a)(1) through (4), are grounds for eviction, and recognize that expiration of *the term is another thing altogether.*

It is easier to do this because of two things which are said in the Rights Act. Section 398.6, disclosure of fees, says: "However, rent shall not be increased *during the term of the lease.*" (Emphasis supplied.)

Section 398.16, retaliatory evictions, says this: "Any action by a mobile home park owner or operator to *recover possession of real property* from a mobile home park resident or to change the lease within six months of a resident's assertion of his rights under this act or any other legal right shall raise a presumption...." (Emphasis supplied.) Observe the phrase, even though it is split, "action ... to recover possession of real property."

These two usages quoted immediately hereinbefore seem to me to mean that there is such a thing as "the

term of the lease" and that the legislature was aware that an action to recover real property at the expiration of the term is a different thing from an eviction.

Read that way, section 398.3, evictions, is not germane to our case since it deals solely with recovery of possession *before* the end of the term.

One prefers to construe the Rights Act in that way so as to avoid the complex questions of retroactivity and constitutionality which would come up if we treated this as applicable to mere recovery of premises at the end of the term.

*G & G Mobile Home Sales v. Godfrey,* 15 Pa.D. & C. 3rd at 755–756 (1974). (Parenthetical expression ours).

Our reading of the Act is in accord and we are guided by the application of long standing principles:

"[L]egislative intent is considered the polestar of statutory construction." *Mount Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville,* 73 Pa.Commonwealth Ct. 531, 537, 458 A.2d 1043, 1046 (1983); *see also,* 1 Pa.C.S.A. § 1921. Thus, in order to properly ascertain the meaning of a statute, we are required to consider the intent of the legislature. *Commonwealth v. Stewart,* 375 Pa.Super. 585, 592, 544 A.2d 1384, 1389 (1988), *alloc. den.* 520 Pa. 604, 553 A.2d 967 (1988). "Moreover, we are permitted to examine the practical consequences of a particular interpretation." *Lehigh Valley Cooperative Farmers v. Commonwealth, Bureau of Employment Security, Department of Labor and Industry,* 498 Pa. 521, 526, 447 A.2d 948, 950 (1982) ("[I]n ascertaining legislative intent, the practical results of a particular interpretation may be considered." (citations omitted).) Pursuant to 1 Pa.C.S.A. § 1922, we are to presume that the General Assembly did not "intend a result that is absurd, impossible of execution or unreasonable." Where the words of a statute are not explicit, the intention of the legislature may be derived by such factors as, *inter alia,* the occasion and necessity for the statute, the circumstances under which it was enacted, the object to be attained, the consequences of

a particular interpretation, and the contemporaneous legislative history. 1 Pa.C.S.A. § 1921(c).

We agree with this analysis and hold that the procedures mandated by the MHPRA have no application where the owner or one in his position properly seeks to recover possession of leased space and where there has been an expired lease and a rejection of a proffered new lease offered in compliance with the Act.[2]

The appellees herein, and to an extent the lower court, argue that eviction applies only to cases where there is a current lease in force and that ejectment applies when there is no lease and that, therefore the Act has no applicability to ejectment cases. Appellees furnish no persuasive authority so holding and we are inclined to believe that this distinction is too facile. Ejectment is a form of action while eviction is an act of dispossession of land and the two are not mutually exclusive. Thus, the possessor of a judgment of ejectment might have to resort to a form eviction. Eviction is not a form of action and is not alluded to in the Pennsylvania Rules of Civil Procedure. A landlord's rights of possession against a tenant are covered by The Landlord and Tenant Act of 1951 as amended, 68 P.S. § 250.101 *et seq.,* including specifically, Article V Recovery of possession. *See* 68 P.S. § 250.501 *et seq.; Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331 (1985).

Finally, since we do not find appellees in their present action to be bound by the strictures of the MHPRA, the provision therein at § 398.4 has no effect on the liquidated damages rights of the owner which is properly determined by the terms of the lease between the parties.

Judgment affirmed.

---

**2.** To the extent that *Bisping v. Layman,* 38 Pa.D. & C. 3rd 414 (1985) differs from our conclusion, it is disapproved.